## Mifflin *versus* Railroad Company.

## Heise *versus* Same.—Bethel *versus* Same.

A *turnpike road* was constructed over the ground of individuals, who, in 1825, receipted in full for damages sustained by its construction. In 1849 an act was passed authorizing the turnpike company to sell its corporate rights to a *railroad* company, and the latter to purchase, for the purpose of laying rails thereon, the same to be laid under the act of incorporation of the railroad company, which provided for the valuation of land occupied by the road, and of all damages which the owner or owners shall sustain or may have sustained by reason of its construction: *Held*, that the obligation imposed on the railroad company to pay damages, was a proper exercise of legislative authority, when conferring on that company the additional privilege ; and that one of the original owners of the land and her grantees were not estopped by the receipt to the *turnpike* company, from claiming consequential damages from the

[Mifflin v. Railroad Company.]

railroad company, by reason of the construction of the *railroad*, though the railroad occupied no more of their ground than was contained within the limits of the turnpike road.

APPEAL, certiorari, and writ of error, to the Court of Common Pleas of *Lancaster county*, by J. H. Mifflin *vs.* The Harrisburg, Portsmouth, Mountjoy, and Lancaster Railroad Company.

Appeal by Samuel B. Heise in a similar proceeding against the same company. And an appeal by Susan Bethel, in a similar proceeding.

The complaint in each case was for alleged injury done by the construction of a railroad by the company, on the bed of a turnpike road.

The material facts were stated in the proceedings at the instance of Mifflin and Heise.

On the 31st day of March 1823, an act, entitled "An act to incorporate the Columbia, Chiques and Marietta Road and Bridge Company," was passed, authorizing the making of a turnpike road, beginning at the east end of the Columbia Bridge, thence upon or near the shore of the Susquehanna over the Chiques Creek, at or near its mouth, to the borough of Marietta, *Pam. Laws* 1822–3, p. 199, &c. Under the provisions of this act of incorporation, the company was authorized to enter upon lands, &c., and invested with the usual powers, privileges, rights, &c., conferred in those days upon turnpike companies, and as expressed in the act incorporating the Lancaster, Elizabethtown, and Middletown Turnpike Road Company, passed March 5, 1804, *Pam. Laws* 1803–4, p. 131, &c.

Under this act of incorporation, the company went into operation, procured letters-patent, and constructed a turnpike road along the eastern shore of the Susquehanna river, from and to the points designated. In the course of the construction of the road, the company entered upon, took, and for their own use appropriated a portion of the land owned by Elizabeth, Mary, and Susanna Bethel, the value of which was afterwards estimated by the parties; and for which they gave the following receipt, viz:—

"Received, July 19th, 1825, of the Columbia, Chiques, and Marietta Road and Bridge Company, one hundred dollars, in full of all damages and injuries sustained in consequence of the said road having been laid out and opened through our real property, and in full of all demands against them.

$100.
　　　　　　　　　　　　　　　　　ELIZABETH BETHEL,
　　　　　　　　　　　　　　　　　MARY BETHEL,
　　　　　　　　　　　　　　　　　SUSANNA BETHEL."

The road, as originally constructed, continued to be used by the company, until, in the course of the construction of the Pennsylvania Canal, a part of the bed of the old turnpike was taken by the commonwealth, and for that purpose; which being done, the

State constructed and completed another road to supply the place of such parts of the old road thus appropriated. Thus matters remained until the 26th day of February, 1836, when the legislature passed the following act, entitled " An act to change the location of that part of the Columbia, Chiques, and Marietta road, which passes through the land of Elizabeth, Mary, and Susanna Bethel, in the county of Lancaster," viz:—

" Sec. 1. *Be it enacted, &c.* That Elizabeth Bethel, Mary Bethel, and Susanna Bethel, of the county of Lancaster, their heirs and assigns, have full power and authority, at their own proper charges and expense, to change the location of that part of the Columbia, Chiques, and Marietta road, that passes through the land of said Elizabeth Bethel, Mary Bethel, and Susanna Bethel, from where the same is now located, and to remove the same to any distance on their own land not exceeding seventy-five feet: *Provided,* That the road shall be made in all respects as good as the present road, and that the distance be no greater. *And provided also,* That the said Columbia, Chiques, and Marietta Road and Bridge Company receive no damage or be put to any expenses thereby."

The alteration of the road thus authorized, was afterwards made by the Miss Bethels,—*under whom the appellant claims,*—and the road thus constructed continued to be used as a turnpike until in the year 1849, when, under the provisions of an act of the General Assembly, entitled " An act relative to the Harrisburg, Portsmouth, Mountjoy, and Lancaster Railroad Company," *passed January 26,* 1849, *Pam. Laws* 1849, 19, the said Turnpike Road Company sold their said road to the said Harrisburg, Portsmouth, Mountjoy, and Lancaster Railroad Company, who thereupon, and under their original act of incorporation, passed June 9, 1832, and the several supplements thereto, passed March 7, 1848, *Pam. Laws* 1848, 177; and also of April 7, 1848, *id.* 1848, 373, relative to the ascertainment and payment of damages, &c., proceeded to make excavations, &c., and to lay down rails on said turnpike road, as authorized and empowered by said acts of Assembly. In doing so, the said Railroad Company made excavations upon, and used the road in part, and through the lands of the appellant, whereby he sustained damages as he alleged. Accordingly, on the 23d day of March 1850, he presented his petition as follows:

To the honorable the Judges of the Court of Common Pleas of Lancaster county.

The petition of J. H. Mifflin, respectfully represents: That in pursuance of the provisions of the several acts of Assembly, supplementary to the act of incorporation of the Harrisburg, Portsmouth, Mountjoy, and Lancaster Railroad Company, respectively passed on the 16th day of March A. D. 1848, *Pam. Laws* 177; the 7th day of April, A. D. 1848, *id.* 373; and the 26th day of January, A. D. 1849, *id.* 18; the said company have,

[Mifflin v. Railroad Company.]

by their engineers and agents, surveyed, and located, and are now constructing a branch of their road, commencing at a point on the said railroad, near the junction therewith of the turnpike road from Marietta to Portsmouth, and extending to and connecting with the Pennsylvania Railway at Columbia. That the said location passes through lands of J. H. Mifflin, in the borough of Columbia, in said county. That he cannot agree with the said company for the sale of such occupied land, nor upon the compensation to be made to him for the damages sustained. He therefore respectfully prays the court to nominate and appoint twelve discreet and disinterested persons of the said county, as an inquest, to view the land so occupied, and the value of the same, and to proceed therein according to the provisions of the act of Assembly incorporating the said company, passed June 9th, 1832, id. 590, and of the several supplements thereto for that purpose enacted.

And he will ever pray, &c.          .          J. H. MIFFLIN.

The 79th section of the act of 9th June 1832, incorporating the Railroad Company provides, that in a proceeding for damages sustained, the viewers shall value the land occupied or required for such railroad or other work, and all damages which the owner or owners shall sustain or may have sustained by reason of the construction of the said railroad and other works, &c.

The first section of act of January 26, 1849, *Pam. Laws* 18, provided that the president and directors of the Harrisburg, Portsmouth, Mountjoy, and Lancaster Railroad Company, be, and they are hereby authorized and empowered to purchase from the president and directors of the Columbia, Marietta, and Portsmouth Railroad Company, and from the president and directors of the Columbia, Chiques, and Marietta Turnpike Company, upon such terms as may be agreed upon, all the right, title, claim, and demand in and to the roads of said respective corporations, to wit, the Columbia, Marietta, and Portsmouth Railroad Company, and the Columbia, Chiques, and Marietta Turnpike Company, for the purpose of laying rails thereon, under the supplements to the act incorporating the Harrisburg, Portsmouth, Mountjoy, and Lancaster Railroad Company, passed the seventeenth day of March and the seventh day of April, Anno Domini eighteen hundred and forty-eight; and the said Harrisburg, Portsmouth, Mountjoy, and Lancaster Railroad Company is hereby authorized to lay rails on said roads, under the provisions of said supplements.

Others sections conferred the right to sell.

An appointment was made in conformity with the prayer of the petitioner, by the court aforesaid, and precept issued to April term 1850, to the sheriff of Lancaster county, to summon the viewers and to hold the inquisition. This was done, and the precept returned to the court by the sheriff, by which it appears that

[Mifflin *v*. Railroad Company.]

they assessed the damages sustained by the appellant at the sum of twelve hundred dollars.

To the confirmation of this inquisition and report, and against the whole of the proceedings, exceptions were taken and filed on behalf of the Harrisburg, Portsmouth, Mountjoy, and Lancaster Railroad Company, April 30, 1850, some of which were—

1. The proceedings are altogether illegal and void; not being authorized by any act of Assembly.

3. The title to the land occupied by the railroad, and for the taking of which damages are claimed by complainant, is not vested in him.

4. If any title or right or interest in the said land is vested in the complainant, it is in right of his wife, who ought to have been joined with the complainant as co-plaintiff in the petition and proceedings thereon.

5. The complainant was not entitled to receive any damages for the only injury complained of in his petition, and which only the defendant was ready or bound to answer, to wit, the occupation of his land by the said railroad, because the same had been dedicated to public use by the Miss Bethels, and used as a public road by the Columbia, Chiques, and Marietta Turnpike Road Company; and all the rights of the public and of the said Turnpike Road Company are vested in the defendant, for the use of the public.

6. The jury improperly received evidence of consequential injury to complainant's land and houses not taken nor occupied by the railroad, for which no damages were asked in his petition, and of his claim in respect to which the defendant had received no notice, and which the jury had not viewed.

7. The complainant was not entitled to receive any compensation in damages for any fancied consequential injury to the value of any of his land not taken nor occupied nor in any way encroached upon by the railroad.

The petition of Samuel B. Heise was of a similar character with that of J. H. Mifflin, and it was referred to the *same* jury. The jury reported in his favor $288 damages.

On the part of the company it was alleged, that Mifflin and Heise held under the Miss Bethels, the land through which this turnpike road passed. That the survivor of the Bethels had executed to Heise and to Mifflin voluntary conveyances for the several pieces of property which they hold. Also, that the only injury alleged to have been sustained by the petitioners consisted in the depreciation in value of the dwelling-houses by narrowing the pavements in front of them.

On the part of the company, depositions were taken under a rule of court. One of them testified that the railroad was on the bed of the old Columbia turnpike road, and took up from 22 to 23 feet of the bed of the turnpike—that he considered the whole property

through the Bethel estate enhanced in value by the construction of the railroad. That he did not think any part of the property was injured in value except the dwelling-houses, &c.

On the part of complainants, a witness was examined, who testified:—I am acquainted with this property of Mr. Mifflin and Mr. Heise. I am acquainted with these houses. They were not all built at once—*were all built within six or seven years last past.* I do not know what they rent for. In my opinion the houses are decreased in value by the construction of the railroad. There is not more than from two to five feet left for a walk in front of them. The excavation in front of them is from six to eight feet deep, in my judgment: I have not measured. I am acquainted with Mr. Heise's property. I cannot say whether this property is increased or diminished by the construction of the road. There is a small dwelling-house upon his property, (which I forgot,) which is inconvenienced in consequence of this road. I am acquainted with Miss Bethel's property. I think that is depreciated in value by this road. There is a very deep cut through it. The cut is from three to twelve feet all the way through Miss Bethel's property.

Cross-examined :—I think the railroad is very nearly on the bed of the turnpike all the way through Miss Bethel's property. It may vary a little about the centre of it. To the best of my knowledge, Mr. Heise's and Mr. Mifflin's property run back from the canal across the railroad. It is from sixty to seventy-five feet from the canal to the railroad—it varies a little. Heise has two warehouses on his property between the railroad and canal. They are owned by Heise and Mifflin together.

The exceptions, &c. were argued; and afterwards, on the 24th of June 1850, the court sustained the exceptions and decided that the petitioner was not entitled to damages.

*Opinion of* LEWIS, J.—This case comes before us on exceptions to the report awarding to the petitioner $1200 damages, occasioned by the construction of a branch of the railroad upon his land. Various exceptions have been filed, but it is only necessary to notice a single one. It is admitted, that the petitioner claims title to the land under Elizabeth, Mary, and Susanna Bethel; and the evidence shows that a turnpike was laid upon the identical ground taken by the Railroad Company,—that at the time of constructing the turnpike, the land taken for the turnpike was owned by the Miss Bethels aforesaid, and that on the 19th July 1825, they received from the Turnpike Company $100 "in full of all damages in consequence of the turnpike having been laid out and opened on their real property," and executed a receipt in writing for the same. By the act of 26th January 1849, the Railroad Company was authorized to purchase the rights of the turnpike, and lay rails, &c. for a railroad on the line of the turnpike.

The purchase was made ; and no ground has been taken for the railroad except that previously taken for the turnpike.  On the authority of the case in 6 *Whar.* 25, and other cases, we are constrained to decide that the petitioner is not entitled to damages for the change in the manner of using the road.

Report set aside.

There was also a precept before the same jury on the application of *Heise* and *Mifflin.*

A petition by Susan Bethel was presented, in which it was stated that the location of the road was through lands owned jointly by Samuel B. Heise and herself in West Hempfield township, in said county, and praying for the appointment of an inquest.  The same persons were appointed.  They reported as follows :—

" The undersigned having been appointed by the Court of Common Pleas of Lancaster county, do report : That having met at the house of Joseph Black, in the borough of Columbia, and having been sworn and affirmed, *viewed the land of the plaintiff,* and find that she has sustained no damages by reason of the construction of the Harrisburg, Portsmouth, Mountjoy, and Lancaster Railroad."

*Plaintiff's Exceptions.*—1. The act of Assembly requires that the sheriff and jurors shall meet *on the lands,* &c.  In this case, by the writ to the sheriff, he was commanded to summon the jurors to meet "on a tract or piece of land owned by Samuel B. Heise and Susan Bethel."  Yet, notwithstanding the command contained in the writ, and the language of the act of Assembly, the report shows that the jury met at the public-house of Joseph Black, in the borough of Columbia, which is not on or near to the land for which damages are claimed.  2. The report does not show that the jurors went upon the land, or were sworn at the time and place appointed and required by the act of Assembly.  3. The report does not show when or what time the sheriff and jurors met, except that they met at the public-house of Joseph Black, &c.  4. It does not show what the jurors were sworn and affirmed to do; and in this there is a non-compliance with the act of Assembly.  5. The report does not show that the jurors took into consideration the advantages and disadvantages of the railroad to the plaintiff's property, and in determining upon their verdict.

*Opinion of* LEWIS, J.—The facts of the case are similar to those shown to exist in the case of Heise *v.* same defendant, No. 86, April 1850.  From these facts it appears that the petitioner is not entitled to any damages—that no land has been taken by the Railroad Company, except that previously taken by the Turnpike Company, and for which the petitioner has already received compensation.  This objection to the petitioner's claim controls all the exceptions which she has filed to the proceedings upon her own peti-

[Mifflin *v.* Railroad Company.]

tion. The purposes of justice do not require that the report against her claim should be set aside.

Report confirmed.

Exceptions were filed to the opinion, and to the overruling of the exceptions.

From this opinion and judgment in the case of Mifflin, he appealed, and also sued out a writ of error and certiorari, and the following were filed as the exceptions:

1. The court erred in deciding that the receipt for $100, given by the Miss Bethels, dated 19th July 1825, "in full of all damages in consequence of the turnpike having been laid out and opened on their real property," was a receipt in full for all damages sustained by reason of the alteration of it to a railroad.

2. The court erred in holding that "inasmuch as by the act of 26th January 1849, the Railroad Company was authorized to purchase the right of the turnpike, and lay rails, &c. for a railroad on the line of the turnpike," and as "the purchase was made, and no ground has been taken except that previously taken for the turnpike," the said J. H. Mifflin is not entitled to damages for the change in the manner of using the road.

The cases were argued by *Ford* and *Stevens*, with whom was *North*, for appellants.—It was *inter alia* contended that the receipt was for damages done by the *turnpike* road constructed—the company obtained a right of passage for that road *alone*, and the title to the soil remained in the Miss Bethels: 1 *Yeates* 167 ; 1 *Barr* 336 ; 2 *Barn. & Ald.* 793 ; 1 *Bald.* 230 ; 16 *Mass.* 35 ; *Woolwich on Ways* 33, *Law Lib.* The moment, therefore, the land of the appellant ceased to be used as a turnpike, it would have reverted. But the legislature, in the exercise of its power, conferred upon the Railroad Company the right to purchase and convert it into a railroad, upon the condition that they should pay the damages thereby occasioned in the manner prescribed in the original act of incorporation, not of the turnpike, but of the Railroad Company. If this had not been done, they could have been proceeded against as trespassers for having used the land for purposes not sanctioned by the act: Ridge Turnpike *v.* Stoever, 6 *W. & Ser.* 378. The construction of a *turnpike* may be a benefit to an individual; that of a *railroad*, from liability of the property to fire or for other reasons, may be to him an injury. If the jury allowed *consequential* damages, they had a right to do so : Railroad Co. *v.* Yeiser, 8 *Barr* 367.

*Franklin,* for the company.—This property has been long taken and applied to public use, with the consent and at the instance of the Miss Bethels, the then owners, and they received full compensation therefor.

[Mifflin *v.* Railroad Company.]

The right of entry and possession are therefore vested in the public; and the legislature has a perfect right to direct a change in the mode of the public enjoyment of it, without providing any additional compensation to the owner of the soil.

This is expressly decided in the case of the Philadelphia and Trenton Railroad Company: 6 *Whar.* 25, 43–4.

That case governs the present; and the principle contained in it is recognised and supported in 9 *Watts* 382, Green *v.* Borough of Reading. A lot-holder cannot recover damages against the corporation of a borough for grading the street opposite his lot and injuring its value.

The legislature may authorize a bridge company to use a highway without compensation to the owner: 6 *W. & Ser.* 101, Mon. Bridge Co. *v.* Coons; same case, 6 *Barr* 379, see opinion of GIBSON, C. J., 382. A company invested with the right of eminent domain, is not answerable for consequential damages further than provided by the grant.

Neither the State, nor a person, artificial or natural, acting by its authority under a law which the legislature is competent to make, is answerable for consequential damages, occasioned by the construction of a highway, further than is specially provided by the law itself: 8 *W. & Ser.* 85, Henry *v.* Pittsburgh Bridge Co.

The damages here insisted on are altogether consequential; resulting from the inconvenience to which the occupants of the houses are subjected by not having a pavement in front of them.

The injury does not arise from making the railroad, but from taking away the turnpike road.

If the turnpike road had not been removed, the plaintiff would have no right to put a pavement in front of his houses; as the front of the houses is on the line of the turnpike road, and the steps and cellar-doors are encroachments on the rights of the public.

In the case of Mifflin, and of Heise, the opinion of the court was delivered May 27, by

BELL, J.—In the year 1823, the legislature incorporated a company to construct a turnpike road from Columbia to Marietta, under the title of "The Columbia, Chiques, and Marietta Road and Bridge Company," and prescribed the mode of ascertaining the damages thereby sustained by the owners of the land through which the proposed road might run. The road was accordingly made, and afterwards the then owners of the property, now in the seisin of the appellants, agreed with the company as to the value of the damages inflicted, and accepted the sum of one hundred dollars in full compensation for all injuries sustained in consequence of the road having been laid out and opened through their real property, and in full of all demands against them. Twenty-four years after this, viz. in the year 1849, an act was passed authoriz-

[Mifflin *v.* Railroad Company.]

ing the Harrisburg, Portsmouth, Mountjoy, and Lancaster Railroad Company to purchase from the directors of the Turnpike Company, all their right, title, and claim in the said road, and empowering the latter to sell and dispose of the same to the former, "for the purpose of laying rails thereon, under the act and several supplements thereto, relative to the incorporation of the said Railroad Company." This statute grew out of two prior enactments, dated respectively the 16th of March and the 7th of April 1848, by which the Railroad Company was invested with power to construct a branch of its road from an ascertained point on the original road, and extending to the town of Marietta. These acts were supplementary to the statute by which the latter company was originally incorporated, in the year 1832, to make a railroad from Lancaster to Harrisburg, and contain the provision "that in constructing and locating the said branch, and after the same shall have been completed, the said Harrisburg, Portsmouth, Mountjoy, and Lancaster Railroad Company shall be subject to all the provisions and restrictions imposed upon the said company under existing laws, as if the same were herein re-enacted in full detail." The purchase was accordingly made, and a branch railroad built, principally on and occupying the site of the turnpike. Where the new road passed through the lands of the appellants, it became necessary to make an excavation of some depth, by which one portion of their property was cut off from other portions, and certain houses built on the edge of the turnpike were isolated and rendered inconvenient of occupation. It thus happened that what had been a convenient appendage as a road of general use, and a means of facilitating intercommunication, was rendered a positive obstruction in the enjoyment of the appellants' property as it had been before used. This may be, and it is said, is more than compensated by increased facilities created by the making of the railroad in the occupation of the land for other purposes; but as this was a subject for the consideration of the inquest which assessed the damages, it cannot legitimately be taken into account here in determining the abstract right of the landholders to claim remuneration for consequential injuries flowing from the construction of the last improvement. The court below thought such remuneration could not be awarded, because the surface occupied by the turnpike road having been dedicated to public use by legislative authority for every purpose of passage and trial, the community had acquired an interest therein, and no ground having been taken for the purposes of the railroad, other than was before appropriated by the Turnpike Company under a purchase of the right of way, the owners of the soil cannot with propriety complain of a mere change in the mode of *user*, which encroached no further on their actual possession. If this reasoning be correct, the case presents the anomaly of substantial injury inflicted without corresponding remedy; for all the numerous

[Mifflin *v.* Railroad Company.]

laws passed upon the subject of public improvement by canals and roads, and among them that incorporating the appellees, recognise the possibility of damages incurred beyond the mere appropriation of soil necessary to the purpose. The basis of compensation is not to be measured solely by the value of the land taken for public use. The advantages likely to accrue, and the disadvantages to be suffered, enter largely into the estimate.

These considerations may, and frequently do, swell the sum awarded as remunerative, far beyond the worth of the surface occupied, or reduce it to nothing. One mode of occupation may be attended with little or no inconvenience to the owner of the soil, while another may visit him with injuries of a serious character, in reference to the nature of his possessions and the manner of their enjoyment. Nay, while one species of improvement may facilitate his business or add materially to the value of his property, another may hinder the one and largely detract from or entirely destroy the other. The very case before us is illustrative of this, if any reliance can be placed in the correctness of those who measured the amount of injury severally occasioned by the turnpike and railroad. While the first was esteemed, by the parties themselves, as fully compensated by the payment of $100, for the whole line of road passing through the farm then owned by the Misses Bethel, the last is fixed by an inquest at fourteen hundred and eighty dollars, in reference to a part only of the same property. A very limited knowledge and brief reflection will satisfy the inquirer that such a disparity may well occur, under the circumstances which have place here, and it demonstrates, at least, the propriety of making provision for the payment of damages, whether the consequential injuries suffered be the result of an original construction, or flow from the supervention of a new and different work upon an old improvement. Had a railroad been originally made over the lands of the appellants, creating the injuries they now complain of, an omission to provide for remuneration to the owners would have encountered universal disapprobation. The suggestion that the damages suffered were merely consequential could not have been accepted as an answer, except, perhaps, in a discussion relative to the constitutional power of the legislature to concede the right of making such a road over private property, without stipulating for the payment of such damages. In the case of the Philadelphia and Trenton Railroad Company, 6 *Whar.* 25, specially referred to by the court below, the distinction is pointed out between what has been called consequential injuries, and direct damage suffered from actual appropriation of the land, considered in reference to the constitutional prohibition. It is there, and in other cases which follow it, said that though the General Assembly is without power to grant to a corporation the right of *taking* private property for a public use without making compensation, it may

[Mifflin v. Railroad Company.]

authorize the site of a street or highway, dedicated to the use of the people, to be occupied by a supervened railway, without providing for the remuneration of private damages consequent upon it; for, said the court, the constitutional inhibition extends not to mere matters of annoyance. The same doctrine was repeated in the Monongahela Navigation Company v. Coons, 6 *W. & Ser.* 101; and though Mr. Justice HOUSTON there took occasion to dissent from the principle laid down, that an act which incidentally injured or entirely destroyed the enjoyment of property, in a particular way, is not always a *taking* or appropriation of it within the meaning of the constitution, it was again proclaimed in the subsequent case of Henry v. The Pittsburg and Allegheny Bridge Company, 8 *W. & Ser.* 85, where the court declared it to be settled that neither the State nor a person, natural or artificial, acting by its authority or command, under a law which the legislature is competent to make, is answerable for consequential damages occasioned by the construction of a highway, *further than happens to be specially provided.* Notwithstanding, then, some prior difference of opinion, it may now be taken as the ascertained rule, that the lawmakers may legally omit a provision for merely consequential damages, when creating a corporation to construct an improvement for the common benefit. But, I think, such was not the popular impression, and it is certain that, governed either by constitutional scruples or actuated by a sense of common justice, our legislature have always directed payment for consequential injuries suffered by the landholder from the making of public highways or other like works. I say always; for the very few instances where this has been omitted among the numerous acts of this character which load the statute-books, scarcely deserve to be esteemed exceptions. These, to be sure, with one or two instances of departure, relate to original constructions; but what difference can it make in principle, and so far as the dictates of right are involved, whether a railway is laid down on an already made turnpike road, or constructed over a surface newly prepared for the purpose. Had the Columbia, Chiques, and Marietta Turnpike Road Company been at first empowered to make a railway over the appellants' land, doubtless it would have been held expressly responsible, not only for the value of the land actually occupied by the way, but for all incidental injury. Why should a difference of practice be tolerated because such injury flows from a railway engrafted upon a previously made turnpike? There is, obviously, no reason for such a distinction, as perhaps there would have been, had a property in the soil passed to the earlier company by virtue of its payment of damages. The case might then have fallen within the principle which recognises the power of a proprietor to put his possessions to a profitable use, though such *user* may involve an incidental injury to a neighbour; a principle which was recog-

nised in Green *v.* The Borough of Reading, 9 *Watts* 382, and other cases, cited for the appellee. But here, the soil over the surface of which the turnpike ran remains in the original owners or their alienees. During its appropriation to the purposes of the turnpike, those owners might have maintained an action of trespass against the directors of the corporation, had they attempted to construct over its site a railroad, without special authority, or turned it to any other use than that authorized by their charter: Ridge Turnpike *v.* Stoever, 6 *W. & Ser.* 378; for it is undoubted that land taken, under authority of law, for the construction of a turnpike or other road, cannot be used for some other purpose; but the State is bound to protect the highway and preserve its uses according to the terms of the concession: 1 *Bald.* 230; 16 *Mass.* 35. If, then, by the payment of the original damages, the first company purchased under its charter but the right of constructing and using a turnpike over the surface of the soil, it is obvious it could, of itself, unassisted by legislative action, have conveyed no interest beyond this to the second company. As alienees, the latter corporation could not have excavated a shovelful of earth but at the hazard of an action. Their right to do so is something greater and different from any interest derived or privilege purchased from the older company. It is, therefore, to be regarded precisely as though it were an original grant by an exercise of the legislative power, and its enjoyment is subject to all the conditions and restrictions to which the legislature has seen fit to subject it. We are not here presented with a question of constitutional law, such as occurred in the cases I have referred to, and upon which the learned president of the Common Pleas seems to have founded his determination.

The inquiry is not whether the General Assembly might have empowered the Railroad Company to make a branch railway on the site of the turnpike, without making compensation for the incidental damages consequent upon it? Nor is it, whether a municipal corporation in the exercise of its legitimate functions, may alter or cause the grade of streets and highways, without being accountable to the owners of the adjacent property for loss and inconvenience resulting thereupon? as it was in Green *v.* The Borough of Reading. It seems to be, simply, whether the legislature may annex, as a condition to the exercise of such a privilege as was here conferred, the duty of reimbursing private owners for injuries suffered by them in the promotion of the interests of a private corporation, or, if you please, of the public, and have so directed in this instance? Upon this point, the most extreme verge to which this court has gone in favor of private corporations is to be found in the doctrine, reiterated in the last case of Coons *v.* The Monongahela Nav. Co., 6 *Barr* 379, that a company invested with the right of eminent domain is not answerable for

consequential damages *further than is provided by the grant.* · In that case, too, the court gave effect to an act of Assembly directing remuneration for consequential damages, suffered long before the passage of the statute, from acts committed in pursuance of authority conferred by the original charter, which contained no similar provision. In truth, that adjudication recognises the propriety of legislative interference to an extreme much further than is claimed in this instance. But without this authority, not the slightest doubt could be entertained of the justice of providing for remuneration, where new powers and privileges are conferred either on the original company or another substituted for it. We are thus reduced to the single point, whether such a provision is discoverable in any of the statutes which have been enacted in reference to the branch railway particularly under notice? Happily, not the slightest difficulty is found in returning an affirmative response to this *quære.* We have already seen that by the act of March 1848, in constructing and locating the branch road, the appellees are expressly made subject to all the provisions and restrictions imposed by prior laws; and the act of January 1849, which authorizes the sale and transfer of the turnpike road, enacts that the rails to be laid thereon shall be laid under the act and the several supplements thereto relative to the incorporation of the Railroad Company. These references to the prior statutes, as containing the conditions under which the branch road was to be constructed, are too clear and explicit to admit a moment's hesitancy. They empower the company to make a new piece of railroad, as auxiliary to the principal road then completed, upon precisely the same terms imposed by the original statutes in reference to the original work. One of these terms or conditions was the obligation to pay for consequential injuries, assessed in the manner pursued in this instance. When petitioning the court for inquests, the complainants referred themselves to the original act of incorporation, as we have shown they had a right to do. Consequently, in setting aside the inquisition so found, upon the motion that there is no warrant for the inquiry of damages, the court fell into error, and the decrees quashing the inquisitions must be reversed.

But other exceptions were taken to the finding of the inquests, which the court declined to pass upon, and which, indeed, under the opinion entertained, it was unnecessary to consider. As, however, it may be proper to inquire into the truth of these exceptions, or some of them, the record will be remitted to the court below, with a *procedendo.*

And now, to wit, May 26th, 1851, after argument and due consideration, it is ordered that the decree and judgment of the said Court of Common Pleas, quashing the said inquisition, so as aforesaid found upon the petition of the said J. H. Mifflin, be reversed

and wholly set aside; and it is further ordered that the said record be remitted to the said Court of Common Pleas, in order that the said complaint and the finding thereon, together with the exceptions filed thereto in the said court, may be duly proceeded in and finally determined.

A similar decree is to be entered in the case of Heise *v.* The Harrisburg, Portsmouth, Mountjoy, and Lancaster Railroad Company.

In the case of Susan Bethel, the opinion and decree were as follow, by

BELL, J.—For the reasons just expressed in the cases of Mifflin *vs.* the above defendant, and Heise *vs.* the same, we are of opinion the court erred in refusing to entertain the exceptions filed by the complainant, on the ground she is not entitled, at law, to claim the assessment of any damages for consequential injury done to her estate by making the said branch railroad. But as we perceive no merit in the said exceptions so filed, we think the court below was right in refusing to set aside the said inquisition.

Wherefore the said decree, confirming the said inquisition, is confirmed May 27, 1851.