# Riley *v.* Pennsylvania Company, Appellant.

*Railroads—Occupation of street—Station—Nuisance—Act of April 11, 1849, P. L. 754—Equity.*

Under the Ohio act of February 24, 1848, sec. 11, adopted in Pennsylvania by the Act of April 11, 1849, P. L. 754, entitled "An Act to incorporate the Ohio & Pennsylvania Railroad Company," the Pennsylvania company, the successor in title to the Ohio & Pennsylvania Railroad Company, has the right to occupy a street in a borough or township with the municipal consent, to the extent only of a width sufficient for its rails and ties, but not for passenger depots or freight houses.

Even if it should be assumed that section eleven of the Ohio act gave to the railroad company the right at the time of the original location of the railroad, to encroach upon the street for the purposes of a station, this right will not be extended, years after the railroad was located and a station established outside the lines of the street, to a right to encroach on the street by an extension of the station.

The power of a railroad company to occupy a public street or highway must be derived directly, or indirectly, from legislative grant, and must be given in plain words, or by necessary implication, or be taken not to exist.

Where such an encroachment is about to be attempted, a citizen owning property on the opposite side of the street, whose light and view are interfered with, and whose right to use the street may be interfered with by increased travel in the future, and who has bought his property according to a plan of lots on which the street was indicated, has a standing in equity to enjoin the railroad company from encroaching on the street for station purposes.

An abutting owner who must use a street as a means of access to his property has a special interest therein, which gives him a standing to invoke the aid of equity to prevent unlawful obstruction of the street which other members of the general public have not.

The general rule is that a railroad company occupying a public street without authority by legislative grant in clear words, or by unavoidable implication, constitutes a public nuisance, and may be enjoined at the suit of a private citizen specially injured.

*Deeds—Plan of lots—Streets—Right to use streets.*

When an owner of land subdivides it into lots and lays out streets, alleys or courts, for the accommodation of the lots, the purchasers of the lots acquire a right of property appurtenant to the lots, in the use of the streets, alleys or courts, without regard to whether any right is by the plotting and conveyances vested in the public.

*Equity—Equity practice—Multifariousness—Parties.*

Several parties may join as complainants in a bill of equity although there is no privity among them, where they seek to avert an injury which would affect them all in the same manner, although perhaps, not in the same degree. In such a case a failure of evidence as to an alleged special injury to some of the complainants, but not to all, is not ground for dismissing the bill after a full hearing upon the merits.

*Statutes—Construction—Legislative intent.*

The hardship, or inconvenience that would result from one possible interpretation of the words of a statute, may be considered, amongst other things in determining the legislative intent, where the words are as plainly open to an interpretation that would lead to a different result, and still not defeat the general purpose of the enactment.

Argued April 11, 1906. Appeal, No. 141, April T., 1904, by defendant, from decree of C. P. No. 2, Allegheny Co., Jan. Term, 1902, No. 13, on bill in equity in case of Patrick Riley et al. v. Pennsylvania Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON and HEAD, JJ. Affirmed.

Bill in equity for an injunction.

RODGERS, J., found the facts to be as follows:

So far as the facts developed at the trial are material we find as follows :

1. Patrick Riley, James Creese, Samuel Creese and Charles Weber, plaintiffs, are severally the owners of certain lots of ground, situate in the village of Leetsdale, Leet township, county of Allegheny, all of said lots being situated and fronting on the westerly side of First street, as laid out and located in a certain plan of lots by the United States Building & Loan Association of Pittsburg, said plan being recorded in the recorder's office of this county in plan book vol. 4, pages 256, 257 and 258, all of said premises being lots and parts of lots in said plan.

2. The right of way of the Pittsburg, Fort Wayne & Chicago Railway Company, which is leased and operated by the Pennsylvania company, defendant, extends along and abuts upon the easterly line of said First street and opposite to all of plaintiffs' said premises, and on said right of way the railroad tracks of said railway company are laid and operated.

3. At a point on said First street, opposite to the premises of Patrick Riley, one of the plaintiffs, defendant has erected

a railroad passenger station or shed.  Said shed occupies the surface of First street about thirteen feet in width by about sixty-seven feet in length, the defendant is now so in occupancy of said portion of First street.

4. That said occupancy of the portion of First street is an injury to plaintiff's property, causing, or being liable to cause, inconvenience to plaintiffs and is a partial obstruction to their view.

5. That prior to the construction of said building defendant company made application to the township commissioners for their assent thereto and submitted a plan to said commissioners, and after the construction of said building said commissioners passed a resolution at their regular meeting on November 4, 1901, giving their consent thereto.

6. The commissioners of Leet township have not accepted said First street as a public highway by ordinance, as required by the act of assembly, entitled "An Act to provide for the classification of the townships of the Commonwealth with respect to their population into two classes, and to prescribe the form of government for townships of each class," approved April 28, 1899, P. L. 104.

### CONCLUSIONS OF LAW.

1. The street in question being a part of a plan of lots all the properties of plaintiffs, being a part of said plan and abutting on the obstructed highway, while the damage to each of the plaintiffs differs in degree it does not differ in kind, and the bill therefore is not multifarious.

2. The action of the township commissioners in giving their assent to the occupation of the highway was without authority in law, and confers no right on defendant company as against these plaintiffs.

3. While the damage suffered by plaintiffs is not large, it is a material damage, particularly as to one of plaintiffs.

4. The structure erected by defendant upon the street was erected without authority of law, was a trespass on said highway, and its continuance and maintenance thereon is a nuisance as to plaintiffs.

Let a decree be drawn granting a perpetual injunction against the Pennsylvania company, defendant, its officers, agents and

employees from maintaining upon said First street the passenger station, shed or building erected thereon. The costs to be paid by defendant.

*Error assigned* was the decree of the court.

*R. H. Hawkins,* of *Dalzell, Fisher, Young* and *Hawkins,* for appellant.—The building of a portion of this platform and shelter shed on a portion of the public street is not a nuisance: Danville, etc., R. R. Co. v. Com., 73 Pa. 29; Cleveland & Pittsburg R. R. Co. v. Speer, 56 Pa. 325; Phila. & Trenton R. R. Co.'s Case, 6 Wharton, 25; Mifflin v. Harrisburg, Portsmouth, Mt. Joy & Lancaster R. R. Co., 16 Pa. 182; Commonwealth v. Erie & Northeast R. R. Co., 27 Pa. 339; Pittsburg v. Penna. R. R. Co., 48 Pa. 355; Borough of Milvale v. Evergreen Ry. Co., 131 Pa. 1; Mercer v. P., F. W. & C. R. R. Co., 36 Pa. 99; Duncan v. Penna. R. R. Co., 94 Pa. 435.

There can be therefore no question but that the Pennsylvania company as lessee and as the company charged with the duty of operating the Pittsburg, Fort Wayne & Chicago Railway is vested with all the powers of that company: Penna. R. R. Co. v. Sly, 65 Pa. 205; N. Y. & Erie R. R. Co. v. Young, 33 Pa. 175; Petition of N. Y., L. & W. Ry. Co., 99 N. Y. 12 (1 N. E. Repr. 27); Abbott v. N. Y. &. N. E. Ry. Co., 145 Mass. 450 (15 N. E. Repr. 91); Chicago & Western Ind. R. R. C. v. Ill. Cent. R. R. Co., 113 Ill. 156; Vt. Cent. R. R. Co. v. Baxter, 22 Vt. 365.

Neither can there be any doubt that the power of the railroad company is a continuing power which was not exhausted upon the first location of the railroad: Toledo & Wabash Ry. v. Daniels, 16 Ohio St. 390; C., B. & Q. R. R. Co. v. Wilson, 17 Ill. 123.

The plaintiffs sustained no special damage differing in kind from that of the general public: Gold v. Philadelphia, 115 Pa. 184; Black v. P. & R. R. R. Co. 58 Pa. 249; Higbee v. R. R. etc., Co., 20 N. J. Eq. 435; Morris & Essex R. R. Co. v. Prudden, 20 N. J. Eq. 530; Sparkhawk v. Union Pass. Ry. Co., 54 Pa. 401; Wilson v. Strawbridge, 4 W. N. C. 35.

The bill is multifarious: Morris & Essex R. R. Co. v. Prudden, 20 N. J. Eq. 580.

*James Balph,* with him *R. A. Balph,* for appellee.

OPINION BY RICE, P. J., February 25, 1907:

The appellant's first proposition, as clearly stated by its counsel, is that the occupation of this portion—a strip about thirteen feet wide and sixty-seven feet long—of the public street by a portion of the passenger depot of the railroad company, with the consent of the municipal authorities, is not an illegal act; on the contrary, it is expressly authorized by law, and what is authorized by law cannot be a nuisance. The only statutory authority for the act to which our notice has been directed is supposed to be contained in the eleventh section of the act regulating railroads adopted by the legislature of Ohio on February 24, 1848, which became part of the law of this commonwealth to the extent and in the manner following. On February 24 of the same year the Ohio and Pennsylvania R. R. Co., having Pittsburg for the eastern terminus of its railroad, was incorporated by act of the Ohio legislature, and it was therein provided that the company should have all the powers and privileges and be subject to all the restrictions and provisions of the act regulating railroad companies above referred to. It further provided that when the legislature of Pennsylvania should pass a law giving their assent to and confirming the provisions of this act of February 24, then it should take effect and be in force in that state. In April of the same year the act of the Pennsylvania legislature entitled " An act to incorporate the Ohio and Pennsylvania Railroad Company " was approved, whereby the full and entire assent of this commonwealth was given to each and all of the provisions of the Ohio act of February 24, and it was therein declared that the said act was adopted, ratified and confirmed and enacted into a law of this commonwealth, and all and each of the provisions, conditions and restrictions thereof, as fully and as effectually as if the same were enacted section by section. It further provided that exemplified copies of the two Ohio acts above referred to should be annexed to this act, and published in the same manner. Accordingly the three acts were published in the appendix to pamphlet laws of 1849, at pages 754 et seq. The Pittsburg, Fort Wayne and Chicago Ry. Co., the successor to the rights, privileges and property of the Ohio

and Pennsylvania R. R. Co., leased the railway and franchises to the Pennsylvania R. R. Co., which lease was assigned by the latter company to the Pennsylvania company, the defendant in the present case. It is unnecessary to go into further detail, because it is not questioned that the defendant company, which is charged with the duty of maintaining and operating the railroad, is as fully invested with the power contemplated by the section above referred to as the Ohio and Pennsylvania R. R. Co. would be if it were still operating the railroad under the original charter. The section so far as material here reads as follows : " Sec. 11. If it shall be necessary in the location of any part of any railroad to occupy any road, street, alley or public way or ground of any kind, or any part thereof, it shall be competent for the municipal or other corporation or public officers or public authorities owning or having charge thereof, and the railroad company to agree upon the manner and upon the terms and conditions upon which the same may be used or occupied."

" It does not admit of a doubt in this state that a railroad company may use a public street or highway when authorized by its charter, either expressly or inferentially : " Cleveland & Pittsburg R. R. Co. v. Speer, 56 Pa. 325, citing Phila. & Trenton R. R. Co.'s Case, 6 Wheat. 25, 43 ; Mifflin v. Harrisburg, Portsmouth, etc., R. R. Co., 16 Pa. 182 ; Commonwealth v. Erie & Northeast R. R. Co., 27 Pa. 339, 354. , And in Mercer v. Pittsburg, Ft. Wayne & Chicago R. R. Co., 36 Pa. 99, where the section of the charter above quoted was under consideration, it was held that the exercise of the power to authorize the building of a railroad on a street or other public highway may be devolved by the legislature upon the local authorities. These cases, it is true, relate to occupation of a highway by a railroad proper, but the principle that the power of the state over the highways thereof is supreme would sustain legislative authorization of the occupation of a highway by such appendages or adjuncts of the railroad as passenger depots, freight houses, shelter sheds, and the like, subject, of course, to such obligation as may be imposed by the constitution to make or secure compensation to individuals affected thereby. The question, therefore, is not of the power but of the intention of the legislature to delegate to local authorities the dis-

cretionary power to permit the railroad company to occupy a highway in that manner. In the consideration of this question it is well to notice that if the section delegates to the local authorities the power to permit such structures to be erected in a highway, it contains no restrictive words that would prevent the occupation of the entire width of the highway. Thus there would be conferred on township supervisors and township commissioners, who have not been intrusted with the general authority to vacate highways, special authority to do what would be equivalent to that, so far as the ordinary public uses for which the highway was laid out or dedicated are concerned. We are not unmindful of the principle that where the words of a statute are plainly expressive of an intent, not rendered dubious by the context, the interpretation must conform to and carry out that intent, and that it matters not, in such a case, what the consequences may be. But it is equally true that the manifest injustice, the hardship or inconvenience that would result from one possible interpretation of the words may be considered, amongst other things, in determining the legislative intent, where the words are as plainly open to an interpretation that would lead to a different result and still not defeat the general purpose of the enactment. It is proper, therefore, to notice further, that neither the section itself, nor any other section of the act, provides an adequate remedy for the substantial injury that would be wrought in many instances by the unrestrained exercise of the extraordinary power to erect buildings in a highway, especially in a street in a borough or city or other thickly populated community. It is not to be supposed that the legislature, even at that early day when railroad privileges were so freely granted, was not cognizant of, or not regardful of, other interests that would be prejudicially affected by the grant of a privilege to bar the public and abutting property owners from the use of the highway for ordinary purposes. And the force of the consideration we have alluded to is neither strengthened nor weakened by the fact that an adequate remedy has, or has not, been afforded by later legislative enactment or constitutional provision. Our concern is with the intention of the legislature that enacted the section under consideration. What may have been done since cannot affect that question. Looking then more closely at the words

of the section we see that the occupation of the highway by the location thereon of the railroad, or part thereof, is the privilege it confers ; it does not confer the privilege, certainly not in express terms, upon the company to occupy the highway for any and every legitimate purpose of its incorporation.   It is the location of the railroad, or part thereof, to which it relates. Unquestionably the word railroad, in some connections, would properly include, not merely the steel rails and ties upon which the cars run, but also the cars themselves, the locomotives, the passenger depots, the freight houses, and every adjunct or appendage of similar nature.   In other connections it would be improper to ascribe to it so broad a meaning.   For example, in construing an act of congress declaring that a certain railroad should be and remain a public highway for the use of the government of the United States, free from all toll or other charge for transportation of any property or troops of the United States, Justice BRADLY said : " We know, as well as we know the sense of any phrase in the English language which has a historical meaning and application, what is meant when a railroad is spoken of as a public highway.   We know that it refers to the immovable structure stretching across the country, graded and railed for the use of the locomotive and its train of cars : " Lake Superior, etc., R. R. Co. v. U. S., 93 U. S. 442.   So under an English statute which directed the land used as a railway to be taxed at a less rate than other land, it was held, that this partial exemption applied only to the way on which the cars actually go, including merely the line itself, the turntables, the sidings, and the land necessarily used for supporting this way, as, for example, embankments, etc. ; but that the adjuncts, such as stations, " platforms projecting beyond the adjacent width of the road," offices, engine sheds, warehouses, and other fixed buildings, though necessary for the working of the railway, were not part of it within the meaning of the enactment ; South Wales Ry. Co. v. Board of Health, 4 Ellis & Blackburn, 189.   This case was cited by LEWIS, C. J., in Mayor, etc., of Allegheny v. Ohio & Penna. R. R. Co., 26 Pa. 355, which has such a direct bearing upon the question before us as to warrant extended reference to it.   The case originated by a bill filed by the municipal authorities of the city of Allegheny to restrain the Ohio & Pennsylvania R. R. Co., from

using certain public ground called the South Common for its tracks and other railroad purposes. The company defended under an ordinance or resolution of councils, which provided that as far as the title of the city extended, the right of way fifty feet wide over the common, as the same had been located by the company, should be granted to the company free of charge ; and the ordinance was defended, in part, under the eleventh section of the company's charter now under consideration. LEWIS, C. J., with whom WOODWARD, J., concurred, was of opinion that as against the city the company had the right to occupy the common to the extent contemplated by the ordinance ; BLACK, J., and KNOX, J., were of opinion that the ordinance was null and void for want of power in the city to make the grant, without obtaining releases from the commonors as provided by the act of 1840, and would have granted an injunction excluding the company from the common altogether ; but as the other two members of the court who heard the case would not assent to this, they united with them in the decree affording the partial relief indicated in the opinion of the chief justice, rather than have the bill dismissed. In that opinion, after showing that under a grant by the commonwealth, or by a municipal corporation under authority derived from the commonwealth, at the instance and for the convenience of a railroad company, nothing is to be taken by implication against the public except what necessarily flows from the nature and terms of the grant, the chief justice said : " Where a right of way is granted through territories of such extent, as to render depots and stations for water and wood indispensable, at proper points within the limits of the grant, and where the land is either unoccupied or so sparsely populated, that these structures would not be likely to produce serious inconvenience, the right to erect them might be implied from the nature and extent of the grant. But the grant of a right of way through a small strip of ground, designed for public uses in a densely populated city, stands upon a different footing. Under such circumstances it is not reasonable to suppose that anything further was intended by either party, than to contract for the use of so much ground as shall be necessary for the line of the railway alone, and that the ground so granted shall be used only for the

ordinary purposes of passing and repassing thereon. This is necessarily the meaning where the grant is from the public authorities, at the instance of the grantee, and passes away the public rights." He then cites the English case above referred to and proceeds : " Keeping these principles in view, it seems plain that the grant of ' a right of way fifty feet wide, through the commons of the city to Federal street,' is limited to the right of passage, and to receiving and discharging freight and passengers within the fifty feet fixed by the grant." Further on he says : " The right to receive and discharge passengers, even within the fifty feet, exists only by implication, and is not to be carried farther than necessity requires. As the present terminus of the railway is at this point, this right would seem to be to some extent a necessary incident of the right of way. But the company have no right to occupy any part of the fifty feet by any structures except the railroad itself. They have no authority under the contract, or otherwise, to erect, even within the fifty feet, any warehouses, depot-houses, car-houses, wood-houses, water-houses, or any other buildings for receiving or discharging passengers or freight on that part of the railroad which passes through the common." These views were expressed more particularly with reference to the ordinance ; therefore we do not cite them as an authoritative construction of the section of the company's charter through which the authority to enact the ordinance was derived. But it is difficult to avoid the conclusion that the principle of construction applicable to the grant to a railroad company of a right of way over a public common is applicable to the legislative grant under consideration. In what respect is such a grant broader in terms than the former ? Speaking for myself, I can see no such substantial difference as could be pleaded successfully in justification of the occupation of the highway by the kind of buildings above described. It has been said that the words railroad ex vi termini include sidings : Black v. Phila. & Reading R. R. Co., 58 Pa. 249, but no case has been brought to our attention · in which a delegation of power to township officers to permit the occupation of highways in the location of a railroad has been held to include authority to permit, upon such terms and conditions as are satisfactory to them, the occupation of a highway by that kind

of buildings.   The right to erect a watch box such as is
described in Pickup v. Phila. & Reading Ry. Co., 29 Pa. Su-
perior Ct. 631, and Wilson v. Phila. & Reading Ry. Co., 5 W.
N. C. 185, in a highway upon which a railroad is lawfully
laid, stands on an entirely different footing ; and, without de-
ciding the point, we do not say that in such a case (a railroad
laid in the highway) a platform for the use of passengers to
enter and alight from the cars might not be a permissible
structure in the highway.   But it would seem to be an un-.
warranted construction of the delegated power to say that it
includes the right to permit a highway to be occupied wholly
or in part by a passenger depot or similar building where the
proposed location of the railroad itself is not upon the highway.

But even if it be assumed that the delegated power was
broad enough to authorize that at the time of the location of
the railroad, how was it at the time it was attempted to be ex-
ercised in the present instance ?   At that time the company's
railroad had been located and in operation for years.   Its pas-
senger depot at this station was also located and in use on the
north side of the railroad, and on the south side there was suf-
ficient space to enable the company to maintain a platform
eight feet wide without encroachment upon the street upon
which the company's right of way abutted.   This being the
situation, the company proposed to erect, and did erect, on the
south side of the railroad in connection with the platform just
referred to a passenger station or shed for the accommodation
of east-bound passengers, and steps leading from it to the
street.   It stands six feet above the grade of the street, is
supported on posts, is covered, part of it is inclosed in glass,
and it occupies a portion of the street about thirteen feet in
width and sixty-seven feet in length.   We note, also, although
we do not regard this negative finding as absolutely essential
to the conclusion we have reached, that the learned trial
judge, upon a view of all the facts and circumstances, refused
the defendant's request for a finding that it is impossible for
the defendant company to construct an adequate shelter shed
at Leetsdale station without occupying a portion of this street.
If there is anything that ought to be regarded as conclusively
settled by the decisions, it is that the power of a railroad com-
pany to occupy a public street or highway must be derived di-

rectly or indirectly from legislative grant, and " must be given in plain words or by necessary implication," or be taken not to exist: Commonwealth v. Erie & Northeast R. R. Co., 27 Pa. 339; Penna. R. R. Co.'s Appeal, 93 Pa. 150; Penna. R. R. Co.'s Appeal, 115 Pa. 514; Jones v. Erie & Wyoming Valley R. R. Co., 169 Pa. 333. See also South Western State Normal School Case, 26 Pa. Superior Ct. 99; s. c., 213 Pa. 244; Commonwealth v. Allegheny Valley Ry. Co., 14 Pa. Superior Ct. 336. In the construction of such grant directly from the commonwealth, or from township or municipal officers under authority derived from the commonwealth, nothing is to be taken by implication against the public, except what necessarily flows from the nature and terms of the grant. " In either case in the absence of express words, or their equivalent, giving an exclusive right to the street, or to a defined part of it, the grant, whether legislative or municipal, will be construed most strongly against the grantee, and most favorably in aid of the existing public right of passage: " Jones v. Erie, etc., R. R. Co., 169 Pa. 333. The application of these principles to the case in hand can lead to but one conclusion. The words of the statute are: " If it shall be necessary in the location of any part of any railroad," etc. It certainly was not deemed necessary by the company to occupy the land now included within this street in the location of its railroad, as we have shown; but as a switch or turnout or siding, or the like, is part of a railroad, it might be argued that it was not necessary to exercise its power with reference to every such part of the railroad at one time; and, therefore, that the condition upon which the township officers are to exercise their discretionary power will not arise until the location of the switch, siding, or like, comes to be made. For this and other reasons the cases cited as to the continuing power to condemn land for such purposes do not furnish much aid, certainly do not control, in the solution of the question before us, which is whether, after the location and construction of the railroad and its passenger station upon other land, and the operation of the railroad in that location for years, the township officers have power to authorize the company to extend its buildings, or to erect other buildings for the same purpose, in the adjoining highway. Even if the words of the section were more favorable than they are to the construction, ably con-

tended for by the appellant's counsel, there still would be grave doubt whether the legislature intended to invest them with such extensive power, to be exercised whenever the great convenience of the railroad company would be subserved thereby. It is only by giving to the words of the section a meaning which they neither necessarily nor clearly imply that the conclusion can be reached that the township officers have such power. We conclude that they have not. It follows that the learned judge below was right in holding that the action of the township commissioners in authorizing the occupation of the highway in the manner described was without authority in law.

As the bill was filed before the construction of the building, and before the formal resolution of the commissioners giving their assent upon the terms and conditions therein specified was adopted, it could not be claimed, and is not, that the plaintiffs are estopped by acquiescence or delay from resorting to this remedy. There is no consideration of that kind to affect the decision of the case. But the appellant does very strenuously insist that none of the plaintiffs has sustained such special damage as entitled him to maintain a bill in equity to enjoin this unauthorized use of the highway. It is true the building is on the opposite side of the street from the property of the plaintiff Riley, and in that respect the case resembles North Penna. R. R. Co. v. Inland Traction Co., 205 Pa. 579. But there is this obvious difference between the two cases. In that case the injury complained of was the laying of a street railway track upon the highway, which did not exclude the public or the plaintiff from the use of that part of the highway. In this case a portion of the highway has been actually excluded from public use and the plaintiff's use by the building which has been erected thereon. Moreover, while the injury to the plaintiff upon this account is not of the most serious nature, yet there is evidence in the case that to some extent it interferes with his light, and the court has found that it interferes with his view. The highway, it is true, is not greatly traveled at this time and the building is upon that part of it which is not generally traveled by the public. Nevertheless it is a part of the highway which every member of the public has a right to travel, and the case is to be considered

not merely in the light of the present use of the highway but in the light as well of the effect which such unauthorized obstruction therein will have in the future when the travel becomes greater and the territory more thickly populated. Nothing is to be taken against the plaintiffs certainly upon the ground that they have moved too promptly. If they had not moved promptly, it would probably be urged against them, if, when the injury should become more apparent and serious, they should undertake to have it abated. The three decisions of our Supreme Court cited by the appellant's counsel in support of the proposition now under consideration are: Gold v. City of Phila., 115 Pa. 184; Black v. Phila. & Reading R. R., 58 Pa. 249, and Sparhawk v. Union Pass. Ry. Co., 54 Pa. 401. These cases are plainly distinguishable and do not rule the case in hand. In the first the question was whether a municipal corporation charged with the duty of keeping the highway in repair is liable to the owner or occupier of property fronting thereon for the loss of business resulting from the neglect of this duty. We need not comment on the distinction between that case and the present. In the second case the general proposition was enunciated that where a railroad track is on a public street owners of property abutting on the street, and in the vicinity, to sustain a bill to enjoin, must establish that it is a public nuisance, and that they have sustained special damage. There is no room for difference of opinion upon that general proposition, but whether the evidence in that case was such as to make it analogous is a matter which we cannot determine from the report. It is evident, however, that the case was decided largely upon the ground that the laying of the railroad track upon the street was not contrary to law but was authorized by the acts cited in the opinion of Mr. Justice READ. The third case is thus distinguished from cases like the present by Mr. Justice WILLIAMS in Thomas v. Inter-County Street Ry. Co., 167 Pa. 120: " In this case a bill was filed to restrain the Union Passenger Railway Co. from running street railway cars on Sunday. The company was lawfully incorporated. Its right on the streets was not denied; it was alleged, however, that the running of street cars was the pursuit of a wordly employment on the Lord's day, and therefore a violation of the Sunday law. What was held

was that an act that is simply illegal will not ordinarily be restrained except at the instance of some person who can show that he is injured by it.   If the object of the plaintiff is simply to enforce a general law, he will be left to the remedy which the law itself provides for its enforcement." We need make no further comment upon the distinction between this case and the case in hand.   The decisions outside of Pennsylvania which are cited seem to carry the doctrine as to balancing the inconveniences further than it is maintained in Pennsylvania where there is no doubt as to the unlawfulness of the act complained of, or as to the plaintiff's legal right.  See Walters v. McElroy, 151 Pa. 549 ; Bigler v. Penna. Canal. Co., 177 Pa. 28 ; Groff's Appeal, 128 Pa. 621; Sullivan v. Jones & Laughlin Steel Co., 208 Pa. 640.   An abutting owner who must use the street as a means of access to his property has a special interest therein which gives him standing to invoke the aid of equity to prevent unlawful obstruction of the street which other members of the general public have not.   Moreover, under the facts of this case the principle is applicable, that when an owner of land subdivides it into lots and lays out streets, alleys or courts for the accommodation of the lots, the purchasers of the lots acquire a right of property appurtenant to the lots, in the use of the streets, alleys or courts, without regard to whether any right is by the plotting and conveyances vested in the public.   This subject is quite fully discussed by our Brother PORTER in Carroll v. Asbury, 28 Pa. Superior Ct. 354.   When one, under such circumstances, has bought with reference to the advantage derivable from having a street fifty feet wide in front of his lot, and by reason of the implied contract with the vendor has acquired such right of property appurtenant to his lot as is described in the case cited, it would seem clear that the narrowing of the street immediately in front of his premises to thirty-seven feet, by erecting thereon a permanent structure without authority of law, would be a special injury to him, differing in kind from that sustained by other members of the general public who simply have a right of passage ; and this is true whether the dedication to public use had been completed by acceptance on the part of the public authorities at the time of the erection of the nuisance or not.   How can it be said that the right to have the aid

of a court of equity to prevent the consummation of an act so plainly prejudicial to his rights is affected by the fact that it is a public nuisance as well? If he moves promptly, before the threatened wrong has been done, and no acquiescence, laches, delay in prosecuting his case, or other consideration of that kind can be pleaded against him, it is no answer to his application for preventive relief to say that the injury will not be irreparable in money damages. Upon this point we quote from the opinion of Justice TRUNKEY in Penna. R. R. Co.'s Appeal, 115 Pa. 514: " Where railroad companies or individuals exceed their statutory powers in dealing with other people's property, no question of damage is raised when an injunction is applied for: Commonwealth v. Railroad Co., 24 Pa. 159. True, they have not taken the plaintiffs' property, and, if the plaintiffs have not been specially injured, they are not entitled to injunction. But if the defendants, without authority from the state, create a' nuisance on the street, one who is specially injured is entitled to relief without proving the amount of damage. In such a case, the defendants are not in the position of a person who carries on a business, lawful in itself, of which a neighbor complains. They are not on their own land. If not empowered to use the street, they have no more right to construct a railroad on it than any other person. A wrongdoer may not set off benefits to prevent the injured party obtaining relief. A man is not to be driven from his home by offensive structures, or compelled to sell it even for more than its value by one who is not invested with power to injure or take it for public purpose." We cite further the remarks of Chief Justice MITCHELL in the recent case of Edwards v. Pittsburg Junction R. R. Co., 215 Pa. 597, at page 602, and again call attention to the case of Thomas v. Inter-County St. Ry. Co., 167 Pa. 120. The general rule that a railroad company occupying a public street without authority by legislative grant in clear words or by unavoidable implication constitutes a public nuisance and may be enjoined at the suit of a private citizen specially injured is not open to question and under the evidence we are of opinion that it would sustain this bill, at least so far as the plaintiff Riley is concerned.

The remaining proposition to be considered is that the court ought to have dismissed the bill for multifariousness. Al-

though, usually, there must be some privity between the complainants in a bill, yet there are many cases analogous to the present where those between whom there was no privity have been allowed to sue together when they have sought to avert an injury which would affect them all in the same manner, although perhaps not in the same degree.   The case most frequently cited in this country is Murray v. Hay, 1 Barb. Ch. 59, where Chancellor Walworth—contrary to the rule in the English case of Hudson v. Maddison, 12 Sim. 416—held, that two or more persons having separate and distinct tenements which are injured, or rendered uninhabitable by a common nuisance, or which are rendered less valuable by a private nuisance, which is a common injury to the tenements of both, may join in a suit to restrain such nuisance.   In Story's Equity Pleading, sec. 286 (b) the learned author says that the case of Hudson v. Maddison, 12 Sim. 416, seems not to be in entire harmony with some of the other English cases cited, and the editor of the tenth edition of that valuable work says that the doctrine of Murray v. Hay has been quite generally accepted in America.   Amongst the analogous cases that may be referred to in support of the doctrine of that case are Cadigan v. Brown, 120 Mass. 493 ; Nash v. New England Mut. Life Ins. Co., 127 Mass. 91; Pettibone v. Hamilton, 40 Wis. 402; Scofield v. Lansing, 17 Mich. 437 ; Taylor v. St. Ry. Co., 80 Mich. 77 (45 N. W. Repr. 335) ; Rowbotham v. Jones, 47 N. J. Eq. 337 (20 Atl. Repr. 731).   See also Gould on Waters, 400, and Rafferty v. Central Traction Co., 147 Pa. 579.   It is true the plaintiffs have not a common interest in the sense of owning land by a common title ; but convenience justified their joining in a single suit to prevent the injury complained of and no inconvenience or injustice that we can conceive of could result to the defendant.   Where a bill is not demurrable for multifariousness upon the ground now being considered, a failure of evidence as to the alleged special injury to some of the plaintiffs, but not as to all, is not ground for dismissing the bill after a full hearing upon the merits.

There are other questions in the case which need not be considered in view of the conclusions we have reached upon these questions.

The decree is affirmed, the appellant to pay the costs.